THE PHILADELPHIA, WILMINGTON AND BALTIMORE RAIL-ROAD COMPANY,

*vs.*

THE WILMINGTON CITY RAILWAY COMPANY.

*New Castle, March T.* 1897.

A railroad company, operating a steam railway which crosses a city street, cannot, in the absence of proof of special damage, obtain an injunction to prevent a street railroad, authorized to use such street and operating its cars by electricity, from crossing the tracks of the former with its tracks and trolley wires, on the ground that the street railway company is not authorized by its charter to use electricity as a motive power, and is therefore proceeding *ultra vires*, or usurping a franchise.

A public street of a city, used as such before the construction of a railroad which crosses it, is a common highway, to the use and enjoyment of which the people of the city and the public in general have a paramount right, and the railroad takes its right subject to the right of the public to use the street in a reasonable and lawful manner.

In the absence of legislation on the subject, the difficulty or danger of the crossing of the right of way of a steam railroad track, at grade, by a street railway, caused by the multiplication of the tracks and trains of the former, incident to its business, is not a

reason for enjoining any use of the streets across such right of way, which is a legitimate use of the highway, and not an additional servitude or easement.

What is ordinarily known as a street railway, though operated by electricity by means of a trolley wire, is not an additional burden to that of the general easement of the public in street or highway.

BILL FOR INJUNCTION by a steam railroad company to restrain a street railway from crossing its roadway. The parties were both corporations of this State. The complainant, a steam railroad company, having its tracks laid across Fourth Street in the City of Wilmington, sought to restrain the defendant, a street railway company, from constructing its railway and operating it by electricity, over the track of the complainant at said crossing.

The case was heard upon a rule to show cause why a preliminary injunction should not be issued.

The facts are fully set forth in the opinion.

*Gray, Ward and Gray,* for complainant.

The charter of the defendant company, granted in 1864, does not authorize or contemplate the use of any other motive power than that of horses, then the only one in use for street railways; steam power being authorized only with the consent of the Council. The use of electricity, being of very recent development must be held to be unauthorized, and the burden rests upon a railroad attempting to cross the line of another to show its legal right to use such motive power. *Port Richmond and Prohibition Park Electric R. R. Co. vs. Staten Island Rapid Transit Co',* 144 *N. Y.* 445.

Some cases, apparently authorizing the use of electricity by corporations chartered prior to its use as a motor, are upon examination readily distinguished, as by charter right to use discretion as to motive power. *Patterson Ry. Co. vs. Grundy,* 51 *N. J. Eq.* 213; *Hudson River Telegraph Co. vs. Watervliet Turnpike & Ry. Co.,* 135 *N. Y.* 393. So the right has been held to have been conferred by general statute, subsequent to the charter, authorizing the use of electric motors. *Halsey vs. Rapid Transit Co.,* 47 *N. J. Eq.* 380, 20 *Atl.* 859.

Here the charter must be construed as authorizing the

motive power then in use. *North Chicago City Ry. Co. vs. Lake View*, 105 *Ill.* 207; *State vs. Trenton*, 54 *N. J. L.* 92, *Farrell vs. Winchester Ave. R. R. Co.*, 61 *Conn.* 127, 23 *Atl.* 757; 3 *Elliott on Railroads* 1620. The use of electricity as a motive power is an additional franchise. In *re Third Ave. Ry. Co.*, 121 *N. Y.* 536. Such a franchise can be conferred only by the Legislature,—not by the municipality. *Farrell vs. Winchester Ave. R. R. Co., supra.*; *Commonwealth vs. Erie & North East. R. R. Co.* 27 *Pa. St.* 339, 354; *In re Phila. & Trenton R. R. Co.*, 6 *Whart.* 25. And the grant of a franchise by the Legislature will be strictly construed. *People ex rel. Third Ave. Ry. Co. vs. Newton, Commissioner*, 112 *N. Y.* 396. The question whether public convenience will be served by a proposed change is for the Legislature and not for the Courts. *King vs. Ward*, 4 *Ad. & El.* 384.

If a corporation exceeds its powers and in so doing interferes with the rights of others, equity is bound to interfere whether such interference was by mistake or fraud. *Delaware and Raritan Canal Co. vs. Camden and Amboy R. R. Co.*, 16 *N. J. Eq.* 321.

But even conceding the right to use electricity, the crossing of the railroad tracks at Fourth Street should not be allowed:

1. The maxim *sic utere tuo ut alienum non laedas* would be thereby violated. *Bohan vs. Port Jervis Gas Light Co.*, 122 *N. Y.* 18; *Brieson vs. Long Island R. R. Co.*, 103 *id.* 645; *Haskell vs. New Bedford*, 108 *Mass.* 208; *Franklin Co. case*, 67 *Me.* 46; *Boston case*, 19 *How.* 263; *Noyes vs. Hemphill.* 58 *N. H.* 536; *Reinhardt vs. Mentasti*, 42 *L. R. Ch. Div.* 685; *Commonwealth vs. Alger*, 61 *Mass.* 53. And the complainant, being first in possession, is first in law and equity. *Lake Shore & M. S. Ry. Co. vs. N. Y., Chicago and St. Louis Ry. Co.*, 8 *Fed. Rep.* 858; *Pom. Eq. Jur. Sec.* 414.

2. The crossing at these points would be a nuisance. *Wood, Nuis. Secs.* 770–1, 746–7, 754; and would inflict irreparable injury on complainant; *Commonwealth vs. Pittsburg and Connellsville Ry. Co.*, 24 *Pa. St.* 159; which is for that reason entitled to an injunction; *Poughkeepsie Gas Co. vs.*

*Citizens Gas Co.*, 89 *N. Y.* 493; the nuisance being especially injurious to it. *Harlan and Hollingsworth Co. vs. Paschall*, 5 *Del. Ch.* 455; *Cranford vs. Tyrrell.* 128 *N. Y.* 341.

3. The crossing as proposed is opposed to public policy. *Penna. R. R. Co. vs. Braddock Electric Ry. Co.*, 152 *Pa. St.* 116. This is particularly so in this state, as shown in all recent charters for electric railways which are prohibited from crossing steam railways at grade.

The counsel argued at length upon the settled rules of construction of grants but in the view of the case taken by the Court the authorities cited on this subject were not applicable.

*Willard Saulsbury*, for respondent.

The charter of the respondent, by reasonable construction, must be held to authorize the use of electricity. A distinction, overlooked on the other side, is that a strict construction of the franchise is compatible with a liberal construction as to the means of operation. Nothing fairly incidental to the thing authorized is to be held *ultra vires*, unless expressly prohibited. *Atty. Gen. vs. Great Eastern Ry. Co.*, *L. R*, 5 *App. Cas.* 473.

Under charters, specifying other means of operation, the use of electricity has been upheld. *Hudson River Telegraph Co. vs. Watervliet Turnpike and R. R. Co.*, 135 *N. Y.* 393, 32 *N. E. Rep.* 148; *Lonergan vs. LaFayette St. Ry. Co.* (*Circ. Court Indiana*) 3 *Am. Elec. Cas.* 273; *Ogden City Ry. Co. vs. Ogden City*, 7 *Utah* 207, 3 *Am. Elec. Cas.* 321, 26 *Pac. Rep.* 288; *Detroit City Ry. Co. vs. Mills. et al.*, 85 *Mich.* 634, 3 *Am. Elec. Cas.* 333; *Lockhart vs. Craig St. Ry. Co.*, 139 *Pa. St.* 417; 3 *Am. Elec. Cas.* 314.

Statutes authorizing municipal authorities to permit the maintenance of horse and steam railroads, are held to include discretion to grant franchises to electric railways. *Buckner vs. Hart*, 52 *Fed. Rep.* 835, 4 *Am. Elec. Cas.* 21; *North Baltimore Passenger Ry. Co. vs. North Ave. Ry. Co.*, 75 *Md.* 233, 4 *Am. Elec. Cas.* 1.

Legislative recognition of a motive power not named in the charter, ratifies its use. *Koch vs. North Ave. R. R. Co.*, 75 *Md.* 222, 23 *Atl.* 463.

A street railway has the right to cross a steam railroad track on a public highway as a necessary incident of its right to use such highway, and without any condemnation proceedings. *West Jersey R. R. Co. vs. Camden &c., Ry. Co.*, 52 *N. J. Eq.* 31, 29 *Atl.* 423; *Old Colony R. R. Co. vs. Rockland &c. Ry. Co.*, 161 *Mass.* 416; *Crosw. Elec. secs.* 227, 231; *Lynn and Boston R. R. Co. vs. Boston & Lowell City R. R. Co.*, 114 *Mass.* 88; *Brooklyn &c. R. R. Co. vs. Brooklyn City R. R. Co.*, 33 *Barb.* 420, 424; *Market St. Ry. Co. vs. Central Ry. Co.*, 51 *Cal.* 583; *Chicago &c. Ry. Co. vs. Whiting &c. Ry. Co.*, 139 *Ind.* 297, 5 *Elec. Cas.* 236.

The injunction prayed in this case should not be granted because no special damage will accrue to the complainant by the crossing contemplated. The question can only be raised by the Attorney General on *quo warranto. Morris & Essex R. R. Co. vs. Newark Pass. Ry. Co.*, 51 *N. J. Eq.* 379, 5 *Am. Elec. Cas.* 229; *N. Y. &c. R. R. Co. vs. Bridgeport Traction Co.*, 65 *Conn.* 410, 5 *Am. Elec. Cas.* 246; *West Jersey R. R. Co. vs. Camden &c. Ry. Co.* 52 *N. J. Eq.* 31, 5 *Am. Elec. Cas.* 137; *Halsey vs. Rapid Transit Co.*, 47 *N. J. Eq.* 380; *Market St. Ry. Co. vs. Central Ry. Co.*, 51 *Cal.* 583; *Thomp. Corp. sec.* 6772.

A railroad company when permitted to cross a public highway is required not only to make but also to keep its crossing safe for the public using the highway. If an increase of business renders the crossing dangerous the company must do whatever is necessary to make it safe. *McCoy vs. P. W. & B. R. R. Co.*, 5 *Houst.* 609; *State vs. St. Paul &c. Ry. Co.*, 35 *Minn.* 131, *Elliott on Roads and Streets*, 599, 600, 610.

The complainant alleges that it occupies one hundred and twenty feet, whereas by the charter of its constituent company, under which alone it occupies the street. 8 *Del. Laws*, 133, 351 and 9 *id.* 59, it was only entitled to use one hundred feet.

It is thus a wrongdoer and not entitled to complain in a court of equity, nor can it rely upon its own violation of duty to defeat the rights of others. *Parker vs. Boston and Maine R. R. Co.*, 3 *Cush.* 117.

In doubtful cases the court always inclines to refuse an injunction. *Miller vs. Erie Telegraph & Telephone Co.*, 37 *Minn.* 347; *Union St. Ry. Co. vs. Hazleton Ry. Co.*, 154 *Pa. St.* 422.

The Chancellor:—

The complainant operates a line of railroad from the City of Philadelphia to the City of Baltimore and beyond which crosses the State of Delaware. It passes through the city of Wilmington and crosses Third and Fourth Streets at grade, both of said streets having been common highways established and maintained at the expense of the City of Wilmington, long before the company complainant was incorporated, or in fact any other railroad company in this country.

At a short distance below the railroad crossing there is a bridge over the Christiana River, known as the Third Street Bridge, serving as a means of communication with an outlying portion of the city known as South Wilmington, as well as with the adjacent country and the neighboring City of New Castle.

The respondent operates a street railway in the city of Wilmington and upon some country highways adjacent thereto, by electricity, under what is known as the trolley system, and has laid street railway tracks along Third Street to the complainant's railroad, both on the northerly and southerly side. Its purpose is to cross complainant's road with its street railway where complainant's road crosses Third Street, thus connecting with its tracks already laid across the Third Street Bridge and in South Wilmington.

Respondent's charter, granted in 1864, provides that it may "cross any track of any railroad company now incorporated, or hereafter to be incorporated, Provided that it conform to the grade of the track to be crossed".

The complainant filed a bill in equity to restrain the proposed crossing. Upon the presentation of complainant's bill I granted a rule to show cause why the preliminary injunction prayed for in said bill should not be awarded, with a restraining order until the determination of the rule.

The bill was subsequently amended and the restraining order modified in accordance therewith.

The amended bill, in addition to the usual prayers for subpoena, answer and further relief, prays as follows: .

"2. That the said defendant, and its successors, its officers, employees, workmen, agents, deputies and attorneys may be restrained by the injunction of this Honorable Court, from again stretching or extending its trolley wires across the tracks of the said complainant on said Third or Fourth Street in said City of Wilmington, and from operating, or attempting to operate its said present or any projected line of street railway across the tracks of said complainant, at Third or Fourth Street, in said City of Wilmington, with the use of electricity as a motive power.

"3. And also, that a preliminary injunction may be issued from this honorable court, to restrain the said defendant, and its successors, employees, workmen, agents, deputies and attorneys, from again stretching or extending its trolley wires across the tracks of said complainant, on said Third or Fourth Street, in said City of Wilmington, with the use of electricity as a motive power, or otherwise howsoever in like manner, until the further order of the Chancellor.

. The respondent has filed its answer fully meeting and denying all the equities of the bill; affidavits have been presented and read on both sides, and the questions involved argued upon the motion for a preliminary injunction.

The complainant does not claim any property rights as abutter or owner in fee which will be affected by the proposed crossing, and only shows in itself the right to cross Third and Fourth Streets, previously existing highways, in such a·manner as shall preserve to the public the use of the streets under the well known common law rule, that where a steam railroad crosses a street or public highway, as in this case, it takes its right subject to the right of the public to use the street in a reasonable and lawful manner. ·

As was said by Judge Houston in *McCoy vs. P. W. & B. R. R. Co.*, 5 *Houst.* 609, decided in 1879, "as Fourth Street was then, and long has been before the company was started

or the railroad was constructed by it, a common highway established and maintained at the expense of the City of Wilmington, there can be no question in this case that the people of the city and the public in general had a paramount right to the use and enjoyment of it as such, as well where it was intersected and crossed by the railroad as in any other part of it." The status of the Third Street crossing is identically the same.

It appears from complainant's bill and affidavits, and it is not denied by the respondent, although it denies the necessity of so many tracks and so much shifting, that in consequence of the great volume of complainant's business, it uses seven lines of railroad track at the crossing of Third Street and eight lines at the crossing of Fourth Street:

That the business and traffic necessitates the passage of about forty-five passenger trains north and fifty passenger trains south, and of about thirty-three freight trains north and south every twenty-four hours over said crossings:

That the necessary local shifting of cars and trains over said crossings causes the passage of about three hundred and fifty trains or parts of trains every twenty-four hours, so that the total average passage of trains, or parts thereof over said crossings does not fall short of four hundred and seventy-five during every twenty-four hours.

And this crowding of its right of way at the Third and Fourth Street crossings, and the consequent dangers and difficulties attending the use of Third and Fourth Streets as public highways, is urged by complainant's counsel as in itself a reason for the exercise of the extraordinary powers of the Court of Chancery and the granting of an injunction in this case.

The only cases cited, however, that could by any construction support such a contention, are under Pennsylvania statutes, expressly investing the courts with special powers to prevent grade crossings.

In the case of the *Pennsylvania R. R. Co. Appellant vs. Braddock Electric Railway Company*, 152 *Pa. St.* 125, 25 *Atl.* 783, the Court recites the Pennsylvania statute as follows:

"When such legal proceedings relate to crossings of lines of railroad by other railroads, it should be the duty of the courts of equity of this commonwealth to ascertain and define by their decree the mode of such crossing which will inflict the least practical injury upon the rights of the company owning the road intended to be crossed; and if in the judgment of such court it is reasonably practicable to avoid a grade crossing, they shall by their process prevent a crossing at grade."

But in this State there is no such legislation. The powers of the Court of Chancery and the rules governing its action in this behalf have not been extended or modified by any general legislation, and I am not aware of any principle in law or equity in accordance with which the difficulties and dangers attending the use of Third and Fourth Streets as public highways at the points where they are crossed by the complainant's railroad, which are caused by the multiplication of the complainant's tracks and trains—by its increased use of its right of way—could be considered by the Court of Chancery as a reason for enjoining any use of the streets across the complainant's right of way, which is a legitimate use of those highways and not an additional servitude or easement.

There are cases, indeed, in which, under city ordinances, the writ of mandamus has been issued to compel a steam railroad company to elevate or depress its tracks when its increased use of its right of way had obstructed or materially impaired the public use of a highway; but I am not aware of any case, except, as we have seen, under special statutes, in which the crossing by a street railway, at grade, of a railroad's right of way, across an existing highway, was ever enjoined by a court of equity on the ground that the great volume of the railroad Company's traffic, the number of its trains at such crossing, rendered the crossing dangerous.

The remedy for such dangers must be sought elsewhere and in a different mode.

It is conceded by complainant's counsel that the overwhelming weight of authority in this country has established the principle, that what is ordinarily known as a street rail-

way is not an additional burden to that of the general ease-
ment of the public in the street or highway, and they submit
to the weight of authority on this point. It is not necessary,
therefore, to cite the authorities or to consider the force of
their reasoning. The whole subject is satisfactorily discussed
by the Chancellor of New Jersey, in *West Jersey Railroad
Company vs. Camden &c. Railway Company*, 52 *N. J. Eq.*,
35, *Atl.* 424, when he says in conclusion: "Basing their con-
clusions upon the contemplation of the customary use of the
electric street railway, the courts have regarded that, as
operated by the trolley system, it is not an additional burden
upon the soil in the common highway", and he cites a num-
ber of important cases in confirmation and illustration.

The Chancellor then further says, speaking of a railroad
crossing similar to the one now under consideration: "The
exercise of the right to cross does not, of necessity, exclude
the public from the enjoyment of the highway at the point
of crossing, further than to permit the lawful operation of
the railroad. The high rate of speed and the dangerous char-
acter of the trains run over the crossing necessitate that, in
the operation of its railroad, the complainant shall have the
right of way, to be exercised in accordance with the require-
ment of law, and imposes the duty upon the public, in the
use of the highway, as the railroad crossing is approached, to
stop, if necessary in the exercise of due care, look and listen,
in order that the right of the railroad may be safely accorded
to it. But there is nothing in the right which otherwise limits
the use of the highway by the public or restricts the increase
of the volume of that use, either in the manner originally
exercised or through conveniences which invention may from
time to time provide. It follows from this conclusion that the
use of the street by the electric car, as it is now usually oper-
ated, is within the purposes for which the highway was created,
that such car is not to be excluded from the point in that
highway where the railroad may cross it. It, like other passers
in the street, must conform with the requirements which the
railroad imposes—stopping, if necessary, looking, listening
and yielding the right of way. Nor do I perceive any tenable

objection to the suspension of a trolley wire over the railroad crossing at a sufficient height. In the present instance it is not suggested that the elevation intended would be insufficient to permit the proper operation of the complainant's road."

Admitting this to be law, it necessarily follows that the respondent, which is admitted to have received from the municipal authorities all the necessary privileges in the streets in question, which it was in the power of those authorities to grant, would have the same right to use those streets for the purposes of its railway across the complainant's right of way as it has to use those streets in any other part of them.

The express legislative grant in respondent's charter, of the power to "cross any track of any railroad company now incorporated, or hereafter to be incorporated, Provided that it conform to the grade of the track to be crossed", has already been referred to.

But the complainant has advanced another objection upon which it largely bases its motion for a preliminary injunction.

It is alleged in the fifth paragraph of the bill that, "The defendant company hath no power or authority under its charter as aforesaid or under the law of the State of Delaware, to use electricity as a motive power for the propulsion of its cars in the said City of Wilmington."

This objection at once raises the question: What standing has the complainant in this Court, to ask, on this ground, for the preliminary injunction prayed for?

If that which the respondent proposes to do with its electric railway does not take property of the complainant for its use, and does not work some damage to it, differing in kind from the damage which the complainant would suffer with the rest of the community, it has no standing to ask for an injunction merely because the respondent proceeds *ultra vires*, or usurps a franchise. This is elementary law, but I will cite two cases which were decided by Chancellor McGill and which resemble very closely the case before me. *Morris & Essex R. R. Co. v. Newark Passenger Railway Company,*

51 *N. J. Eq.*, 380, 29 *Atl.* 184; *West Jersey Railroad Co. v. Camden &c., Railway Co.*, 52 *N. J. Eq.* 39, 29 *Atl.* 423. A careful examination of the pleadings and proof has satisfied me that the complainant in this case has failed to show such special damage.

It is true that it has alleged in the third paragraph of its Bill, as amended, that it "is advised and believes, and therefore avers, that the stretching of said trolley wires across the tracks of said company, and the laying of the necessary ground wires for the operation of said electric road over said crossings upon said Third Street or said Fourth Street, would be attended with great danger to the employees and servants of said complainant operating the trains of said complainant, and would most seriously interfere with the due operation of said road of said complainant at said crossing."

But the answer denies this allegation and alleges that the wires would be strung more than twenty-two feet above the ground, out of the way of any possible interference with complainant's trains or employees.

There are no affidavits in support of this allegation of the bill, and the answer being responsive and being also supported by affidavits, must control in the present application.

The complainant also alleges that the use of electricity under what is known as the trolley system will render the crossing by the street railway more dangerous than if it used horses as a motive power. But the answer denies this allegation, and a great number of affidavits upon this point have been presented and read on both sides. A number of expert electricians and officers of street railway systems throughout the United States testifying in behalf of the respondent, that, with the machinery and safety appliances in use by the respondent, the crossings would be safer than by horse power; and that the chances of accident from any of the causes alleged in complainant's bill and affidavits would be much less than those that might arise in the operation of a horse railway at the railroad crossing.

After carefully considering and weighing these affidavits, I am satisfied that it does not appear from them that the

Opinion:—complainant has no standing in equity.

crossing under the trolley system, at this point, would be more dangerous and a greater menace to the complainant's traffic than would the crossing by horse power, against which no injunction is asked, so that even should it be granted that these allegations are relevant and material to this application, yet as the evidence before me leaves the relative danger to a railroad crossing of the two systems an unsettled question, they cannot avail the complainant.

As has been seen already, the complainant does not claim any property rights as abutter or owner in fee, which will be affected by the proposed crossing of its right of way by the respondent under the trolley system, and does not claim to be in danger of receiving any damages other than those already considered, it is therefore manifest that it has no standing in this Court for its application for a preliminary injunction, and that for the purpose of this motion it is not open to the Court to consider the question whether the respondent railway company has or has not power or authority, under its charter or under the laws of the State of Delaware, to use electricity as a motive power for the propulsion of its cars in the said City of Wilmington. There is more than one way of obtaining a judicial determination of that question, but the proceeding now pending before this Court is not one of them.

The arguments of the learned counsel in this cause have been exceptionally able and elaborate—covering the whole field of inquiry.

I have examined the vast number of cases cited by counsel with great care, and have given attentive consideration to the many points which have been so ingeniously raised and elaborated by them, but I do not deem it necessary in this opinion to discuss any other than those I have already presented, which I believe to be conclusive of the questions at issue. I will deny the motion for a preliminary injunction and discharge the rule in this cause.

Note—For decision as to the right to use electricity as a motive power, see *W. C. Ry. Co., vs. W. & B. S. Ry. Co. post.*